William E. MoClusky, J.
This is an action instituted by the successful plaintiffs in prior negligence actions against the defendant carrier pursuant to the provisions of section 167 of *605 the Insurance Law of this State. The primary actions were tried before this court and verdicts rendered in favor of the plaintiffs and against two of the named defendants, one of whom was a named insured.
The City of Utica is a municipality located in the County of Oneida, New York. As such it had adopted certain safety regulations or ordinances, particularly relating to pyrotechnical displays. The substance of those regulations was that upon application a permit for a pyrotechnical display would be issued upon the furnishing of a liability policy of insurance protecting the city and the applicant and the public generally and that a duly licensed pyrotechnist be employed.
The application herein was made on or about September 22, 1954 and it was accompanied by a liability policy issued by the Farm Bureau Insurance Company (the present defendant’s predecessor) with coverage for bodily injury in the sum of $10,000 for each person and a total of $20,000 for each accident. The named insureds were the City of Utica ” and the “ St. Cosimo and Damiano Congregation, Inc.”. The policy period according to the indorsement, was from 12:01 a.m. on September 26, 1954 to 12:01 a.m. September 27, 1954. The society employed G-iambattisto Lorusso as its licensed pyrotechnist. He contracted to furnish for display and explosion certain aerial bombs. On the day in question thousands of people gathered for the festivities. Bombs of the type mentioned were exploded in a vacant lot at the corner of Catherine and Nichols Streets in the City of Utica by Lorusso. The exterior of the bombs in question was covered by a brownish paper or cover. One week later on October 3, 1954, the three youthful plaintiffs went to this vacant lot looking for praying mantis for school. While so searching they found an unexploded bomb, covered with brown paper. They carried this over to an area in back of a vacant mill near one of the canal slips off Broad Street. The “ dud ” was placed in a hole and a fire started to explode it. It did with a devastating effect so far as the boys were concerned. They received very serious injuries and were incapacitated for some time.
When the actions were commenced against the city, the society and the estate of Mr. Lorusso, the carrier was called upon to defend. It refused to defend upon the ground that the policy did not cover the event, either in point of time or nature or place.
The City of Utica upon the trial was eliminated upon motion. Verdicts were rendered against the society and the Lorusso estate. The verdicts have not been paid. All the requisites for the commencement of an action under section 167 of the Insur *606 anee Law have been met. (Lauritano v. American Fid. Fire Ins. Co., 3 A D 2d 564.)
Implicit in those verdicts is the assumption that Lorusso and the society were negligent in leaving an unexploded bomb in the area rented or used by the society. Both plaintiffs and defendant in this action concede that in the present action there is no question of fact. Both parties have moved for summary judgment.
The policy issued herein was the more or less standard form of liability policy. It covers specifically any injuries received as a result of an accident. The plaintiffs maintain that the accident occurred on September 26, 1954 and that its genesis was the leaving of the dud in the vacant lot at Catherine Street and Nichols Street and culminated in its detonation in a hole in back of some abandoned factory buildings on Broad Street on October 3,1954, one week later.
The general provisions of the policy (Section III) apply only to accidents which occur during the policy period within the United States of America, its territories or possessions or Canada. Obviously the covered event must have occurred during the period the policy was in effect. Not only does the defendant claim this but likewise the plaintiffs.
It is a well-established rule of construction that the language of an insurance policy will be strictly construed and, if at all ambiguous, will be construed against the insurer. (Kelley v. Indemnity Ins. Co. of North America, 252 App. Div. 58, affd. 276 N. Y. 606.)
This rule of construction is not and never has been construed as a plenary grant of power to the courts to rewrite the policy. The words used must be given the meaning that they convey to the average man, unless a technical meaning is indicated. (Lewis v. Ocean Acc. & Guar. Corp., 224 N. Y. 18.)
In the case at bar the policy was first issued to cover a vacant lot at “ Jay Street and Kossuth Avenue, Utica ”. It was for a fireworks exhibition and covers accidents “ arising out of the ownership, maintenance or use of the insured premises or property for the purposes stated in the Declarations and all operations which are necessary and incidental to such purposes (1) pick-up and delivery, installation, servicing, removal or demonstration; and (2) accidents (except accidents due to misdelivery) which occur after completion and abandonment of operations and also arise out of pickup or delivery operations, or the existence of tools, uninstalled equipment and abandoned or unused materials. ’ ’
*607 The policy in part “ Y ” contained definitions. One definition was that of the “ insured premises ”. Therein it was defined as meaning the premises described in item 4 of part 1 of the Declarations hereof. By a rider issued with the policy it provided that the locations for the fireworks exhibition shall be at the corner of Jay Street and Kossuth Avenue and at the corner of Nichols and Catherine Streets, Utica, Oneida County, New York. By another indorsement it was specified that the policy period shall be from September 26, 1954 to September 27, 1954, 12:01 a.m., standard time.
We now come to a consideration of the term accident. Everyone knows that an aerial bomb is intended to explode. The youths who found the dud knew that it was intended to explode. That was its nature and its destiny. The boys used a paper bonfire to have the bomb do just what it did, viz., explode. That was not an unexpected event. It was intended. The injuries sustained were not expected but the violence of the explosion was so that in one sense of the word there was no accident within the coverage of the policy.
By the word “ accident ” generally is meant and understood an occurrence or an event that takes place without one’s foresight or "expectation, an- undesigned, sudden or unexpected event. (1 C. J. S., Accident, p. 427.)
To constitute an accident there must be “ some element of suddenness — something catastrophic — and some incident immediately noticeable.” (Matter of Deyo v. Village of Piermont, 283 App. Div. 67, 69.)
The very nature of an accident negatives any lingering; it implies something sudden and unexpected. The leaving of the unexploded bomb in the vacant lot was certainly careless, and clearly negligence. Its discovery one week later by the youth in question was unexpected but did not constitute an accident within the meaning of the policy.
The theory, that an accident under a policy coverage, was a continuing thing culminating at a later time in a sudden and unexpected event was emphasized in the case of Berger Bros. Elec. Motors v. New Amsterdam Gas. Co. (178 Misc. 1053, revd. 267 App. Div. 333, revd. 293 N. Y. 523.) In that case the plaintiff was a contractor employed by a public utility to adjust electrical appliances in the service area to newly installed 60-cycle current. One Chillson was a customer of the power company and operated a hatchery and turkey farm. The contractor reversed the blades of the incubator fans. The installation was finished December 23, 1940. The incubators were not used until February, 1941. *608 The reversal of the fans was not discovered until May, 1941. In the meantime serious loss to the clutch of eggs occurred. Chillson sued the contractor. The contractor called upon the insurance carrier to defend. It declined and disclaimed upon the theory that there was no accident within the terms of the policy. The contractor in the second action claimed that the accident commenced when the blades were reversed and culminated in February when the incubators were started with a clutch of eggs in them. The trial court denied the existence of an accident; the appellate court reversed emphasizing' the theory of a continuing event or accident. The Court of Appeals reversed the Appellate Division and reinstated the decision of the trial court. The Court of Appeals did not determine whether or not the destruction of the eggs was an accident, but determined that whether or not it was an accident, it was an event that did not occur before the work was completed in December, 1940 and, therefore, not covered. The decision is particularly pertinent in the case at bar to determine whether or not the event in the case at bar was a “ covered ” event under the policy herein.
Again the word “ accident ” conveys the meaning of a sudden and instant happening rather than a condition which continues to develop, progress and ultimately culminate. (Jackson v. Employers’ Liability Assur. Corp., 139 Misc. 686.)
It is true that in that case reference was to an illness. However, the court was endeavoring to discover the meaning of the word accident as used in the liability policy.
The plaintiffs, of course, maintain that the explosion of the bomb, if it is assumed to have been an accident, was covered under the definition of accidents covered. It is claimed that the detonation of the bomb was an accident, which occurred after completion of the operations and arising out of abandoned or unused material. Assuming the explosion of the bomb to have been an accident, and further that it was covered under the language cited, we are still faced with the provisions of the general conditions of the policy which provided that “ any schedule forming a part of the policy shall apply as respects accidents occurring within the initial or succeeding periods and prior to expiration, lapse or cancellation.” Obviously the policy covers accidents or events which occurred during the period that the policy was in force.
From a close examination of the policy, the court is of the opinion that the exploding of the dud on October 3, 1954 was not an accident, for it was something intended by the youth and was not unexpected. Secondly, that the leaving of the bomb *609 upon the premises by the society and its pyrotechnist was negligence but was not an accident within the language of the policy. Thirdly, that the theory that the accident was a week-long lingering process culminating in the intentional exploding of the bomb is untenable. It was not an ‘ ‘ accident ’ ’ covered by the policy. Fourthly, that leaving of the bomb was careless and negligent but did not amount to an accident under the policy. Fifthly, that the policy was limited as to coverage to an accident occurring within the period covered and did not cover accidents occurring after its expiration date.
For the reasons set forth this court concludes there is no question of fact involved and that the complaint should be dismissed and a verdict rendered in favor of the defendant and against the plaintiffs.
Prepare order accordingly.